UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,

v.

ORLANDO MCKENZIE,

        Defendant.

------------------------------------------------------------x

**DECISION & ORDER**
23-CR-500 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**
On March 22, 2024, Orlando McKenzie ("Defendant") filed a motion, ECF No. 23, appealing Magistrate Judge James R. Cho's December 7, 2023 order detaining Defendant pending trial, ECF No. 7. Defense counsel and the Government fully briefed Defendant's motion, ECF Nos. 23, 28, 30, 32, and argued the motion before this Court during a status conference on May 17, 2024. For the reasons stated below, Defendant's appeal is DENIED.

## BACKGROUND

On December 5, 2023, the United States of America (the "Government") filed a three-count Indictment charging Defendant with (1) Sex Trafficking, in violation of 18 U.S.C. §§ 1591(a)(1)-(2) and (b)(1); (2) Sex Trafficking of a Minor, in violation of 18 U.S.C. §§ 1591(a)(1)-(2), (b)(2), and (c); and (3) Promotion of Prostitution, in violation of 18 U.S.C. § 1952(a)(3)(A). ECF No. 1. Criminal forfeiture allegations are included for all counts. *Id.*

On December 7, 2023, Magistrate Judge James R. Cho arraigned Defendant on the Indictment, to which Defendant entered a plea of not guilty on all counts. ECF No. 4. Defendant presented a bail application in an amount to be deemed appropriate by the court and to be co-signed by Defendant's mother and brother, and home incarceration with GPS monitoring. Arraignment Transcript ("Tr.") at 6-7, ECF No. 22. The Government opposed Defendant's bail application on dangerousness and risk of flight grounds. *Id.* at 7-9. After hearing argument from both parties, Magistrate Judge Cho denied the bail package and ordered Defendant detained. *See id.* at 10; Order of Detention, ECF No. 7.

On March 22, 2024, defense counsel filed a motion appealing Judge Cho's bond decision, requesting a bond hearing, and submitting a proposed bail package. Def. Appeal Mot. for Bail ("Def. Appeal"), ECF No. 23. Defense counsel argues the proposed bail application—including, *inter alia*, bond "with at least three signatories, two of which are financially responsible," "property as collateral for the bond," "3rd Party Custodianship," and "[e]lectronic monitoring, GPS monitoring, home detention or home incarceration"—would reasonably assure Defendant's appearance in court and the safety of the community. *Id.* at 4. On March 25, 2024, the Court entered a briefing schedule for the bond motion. ECF No. 25. On April 19, 2024, the Government filed its response in opposition to Defendant's bond motion, arguing "[b]ecause the defendant is charged with sex trafficking, in violation of 18 U.S.C. § 1591, there is a presumption that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" and Defendant "cannot rebut this presumption given the serious danger he poses to the community and the risk of flight he poses if he is released on bail." Gov't Opp'n at 1, ECF No. 28. On May 10, 2024, defense counsel filed its reply in support of its bond motion. Def. Reply, ECF No. 30. On May 14, 2024, the Government filed unsealed and sealed versions of its reply brief in further opposition to Defendant's motion. Gov't Reply, ECF Nos. 31, 32. At the status conference on May 17, 2024, the Court heard argument from the parties on the bail application. May 17, 2024 Transcript ("May 7, 2024 Tr."), FTR.

## **LEGAL STANDARDS**

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required." U.S. Const. amend. VIII. This provision does not create a right to bail; rather, it proscribes bail that is "excessive *in those cases where it is proper to grant bail.*" *United States v. Salerno*, 481 U.S. 739, 754 (1987) (quoting *Carlson v. Landon*, 342 U.S. 524,

536-37 (1952)) (emphasis added). Under the Bail Reform Act, a court must order pre-trial release of a defendant on a personal recognizance bond if such release will "reasonably assure the appearance of the [defendant] as required and will not endanger the safety of any other person or the community." 18 U.S.C. § 3142(b) (2018). Thus, if no condition or combination of conditions will reasonably assure the defendant will not flee or will not endanger others, a court must order detention. *Id.*

A district court reviews *de novo* a magistrate judge's decision to release or detain a defendant pending trial. *See United States v. Esposito*, 309 F. Supp. 3d 24, 30 (S.D.N.Y. 2018) (Marrero, J.) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)). A district court undertakes a two-step inquiry when evaluating an application for bail. *See* 18 U.S.C. § 3142(e). First, the Court must determine whether the Government has established the defendant presents a danger to the community or a risk of flight. *See* 18 U.S.C. § 3142(e). "Defendants pose a danger to the community not only when they commit acts of violence, but also when it is likely they will commit non-violent acts that are detrimental to the community." *United States v. Maratea*, 18-CR-337-5, 2018 WL 11191537, at *3 (E.D.N.Y. Nov. 20, 2018) (Kuntz, J.); *see also United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993).

Second, if the Government meets its initial burden, the Court must determine whether no condition or combination of conditions of release could reasonably assure the defendant will not flee or will not endanger others. *See United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). In making that determination, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person in the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

The Government must support a finding of dangerousness by clear and convincing evidence, *see United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995), and a finding of risk of flight by a preponderance of the evidence, *see United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *see also United States v. Abuhamra*, 389 F.3d 309, 320 n.7 (2d Cir. 2004). A rebuttable presumption of dangerousness and risk of flight arises when a defendant is charged with a sex trafficking offense under 18 U.S.C. § 1591, for which the maximum term of imprisonment is 20 years or more, as well as for offenses involving a minor under 18 U.S.C. § 1591. 18 U.S.C. §§ 3142(e)(3)(D)-(E). In accordance with this presumption, the Court must initially assume "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id.* at § 3142(e)(3). The defendant "bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). If the defendant satisfies the burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* However, "[e]ven in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community," and "by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *Id.*

## ANALYSIS

The Government argues Defendant poses a danger to the community and a risk of flight such that no combination of conditions could reasonably assure the safety of the community or Defendant's appearance in further proceedings. For the reasons discussed below, the Court agrees.

I.  **The Government Has Demonstrated Defendant's Dangerousness to the Community and Risk of Flight**

The Court considers each of the 18 U.S.C. § 3142(g) factors (the "bail factors") in turn. In this Court's view, the bail factors support continued detention rather than release pending trial.

A.  **The Nature and Circumstances of the Offense**

According to the Government, Defendant "traffick[ed] adult and minor victims to work in prostitution at an open-air sex trafficking market along a stretch of Pennsylvania Avenue in Brooklyn, New York (the 'Penn Track'), among other locations." Gov't Opp'n at 1. The Government states Defendant required these women to find customers and engage in commercial sex acts in cars at the Penn Track or in nearby hotels, after which Defendant collected the proceeds and threatened them to obtain more money. *Id.* at 1-2.

In particular, the Government alleges Jane Doe 1 called 911 on November 26, 2023 from near the Penn Track to report Defendant "was threatening to harm her two-year-old son if she didn't give him money that she made in prostitution." *Id.* at 2. While executing a search warrant on an apartment where Defendant was staying with Jane Doe 1, law enforcement officers "located Jane Doe 1's minor son, a 17-year-old pregnant minor ("Jane Doe 2") who had previously been reported missing, and two other adult females inside." *Id.* On December 6, 2023, law enforcement officers tracked Defendant to a hotel in Hamden, Connecticut, where an undercover officer had responded to an online prostitution ad featuring Jane Doe 2. *Id.* During the arrest, Defendant "stated in substance to law enforcement officers that Jane Doe 2 was the mother of his unborn child." *Id.*

The Government also emphasizes Defendant's use of violence and threats of violence against women working in prostitution for him. *Id.* For example, the Government provided a

5

video from August 2023 showing a woman hitting Jane Doe 2 while Defendant yells "beat that b****!" *Id.*

The Court agrees with the Government: Defendant's charged sex trafficking conduct, including with a minor and the use and threat of force, is exceptionally dangerous. As Magistrate Judge Cho stated, "these are serious charges being lodged against this Defendant." Tr. at 10.

Additionally, Defendant faces lengthy maximum penalties if convicted, which further weighs in favor of pretrial detention. While the Court acknowledges Defendant, who was born in Jamaica, has lived in the United States since he was seven years old and his three children are United States citizens living in New York City, Def. Appeal at 2; Tr. at 11, it also recognizes that, when faced with the possibility of a significant prison term, defendants have a strong incentive to flee regardless of their community ties, *see United States v. Blanco*, 570 Fed. App'x 76, 77 (2d Cir. 2014) (finding the district court did not err in ordering detention where, *inter alia*, mandatory minimum prison sentence of five years and possible maximum sentence of 40 years "provid[ed] [the defendant] with a strong motive to flee before trial."). Defendant faces two mandatory minimum sentences of 15 and 10 years of imprisonment on charges of sex trafficking and sex trafficking a minor, respectively; both charges also provide maximum possible sentences of life imprisonment. *See* 18 U.S.C. §§ 1591(b)(1)-(2). Accordingly, this Court finds the nature and circumstances of Defendant's alleged offenses weigh strongly in favor of detention.

### B.     The Weight of the Evidence

The Court also notes the weight of the evidence against Defendant is strong. The Government argues the evidence against Defendant includes "witness testimony, text messages,

photographs, videos and other materials recovered from cellular telephones of the defendant and his victims." Gov't Opp'n at 4.

Defense counsel disagrees, arguing the "evidence is not as strong as the government claims." Def. Reply at 1. In particular, defense counsel states the Government mistakenly claimed the online advertisement featured Jane Doe 2 when in fact "the photos are of a different woman." *Id.* at 2. In its reply, the Government concedes it "erroneously indicated that Jane Doe 2 was featured in the advertisement," but notes the text of the advertisement stated it was for a "Two Girl Special" referring to "Jane Doe 2 and the other woman." Gov't Reply at 1. Such an error raises a question about the strength of the Government's case; however, on reply, the Government also provided two other online advertisements for prostitution featuring Jane Doe 2. Exs. C, D to Gov't Reply, ECF Nos. 32-1, 32-2. According to the Government, the online advertisement of Jane Doe 2, a minor, was posted "using a phone number that is registered to a Cash App account in the defendant's name and with the defendant's date of birth and last four digits of his social security number." Gov't Reply at 2 (discussing Ex. C to Gov't Reply).

Defense counsel states an affidavit from Jane Doe 2 explains "[Defendant] never caused her to engage in sex work, nor did he benefit financially from her sex work" and that Defendant "never threatened or physically harmed her." Def. Reply at 1; *see also* Ex. A to Def. Reply, ECF No. 30-1. Additionally, defense counsel argues the Government fails to "provide any information connecting [the fight video] with the sex trafficking allegations." Def. Reply at 1 (arguing the fight was only between Jane Doe 2 and another woman, and "had nothing to do with [Defendant]"). In response, the Government writes, "witnesses will testify at trial that Jane Doe 2 was working in prostitution for the defendant." Gov't Reply at 2. Additionally, in its argument before the Court, the Government emphasized Jane Doe 2's incredible vulnerability,

7

pointing out both her youth—she was either a minor or only recently turned 18 years old at the time she signed the affidavit—and her prior abuse at Defendant's hands. May 17, 2024 Tr., FTR 3:36-3:37 (arguing Jane Doe 2 "was raped by [Defendant] as a minor," "was abused by him," and "was pregnant by the Defendant or just gave birth to his child"). Regarding the fight video, the Government explained, "there are recordings of Instagram stories regarding this video . . . in which there is reference to the fact that the fight occurred because the Defendant had fired this pregnant minor from being a prostitute for him. Obviously, she subsequently continues to work for him, but that fight, where he is actively a part of it and encouraging it, is on his behalf." *Id.* at FTR 3:39-3:40.

At this early stage in the proceedings, the Court makes no conclusions about the merits of the Government's case. *See United States v. Zarrab*, 15-CR-867, 2016 WL 3681423, at *7 (S.D.N.Y. June 16, 2016) (Berman, J.) ("The Court recognizes the difficulty inherent in assessing the Government's case before trial, and is mindful not to reach any conclusions about [Defendant's] guilt or innocence." (internal citation and quotations omitted)). Nevertheless, significant evidence of a defendant's role in a crime weighs against release. *See United States v. Fishenko*, 12-CR-626, 2013 WL 3934174, at *2 (E.D.N.Y. July 30, 2013) (Johnson, J.). At this time, the Court finds the evidence against Defendant appears sufficiently strong to weigh in favor of his continued detention. *See United States v. Bruno*, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2016) (Kuntz, J.) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long . . . a defendant has stronger motives to flee." (internal citation omitted)).

### C. The History and Characteristics of Defendant

In assessing Defendant's characteristics, the Court looks to "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, [and] past conduct." *Fishenko*, 2013 WL 3934174, at *2 (quoting 18 U.S.C. § 3142(g)(3)).

Defendant is 39 years old and has lived in the United States since he was seven years old. Def. Appeal at 2. Defense counsel argues he "has strong ties to the United States, and New York City," where his mother, children, and siblings live. *Id.*; *see also* Tr. at 10; May 17, 2024 Tr, FTR at 3:26. Defendant has numerous prior felony convictions. In 2005, he was convicted of attempted robbery in the third degree and attempted burglary in the second degree. Gov't Opp'n at 2. In 2007, he was convicted of attempted criminal possession of a weapon in the third degree and sentenced to 18 months to three years of imprisonment. *Id.* In 2008, he was convicted of assault in the second degree and sentenced to five years of imprisonment. *Id.* Defendant also has two misdemeanor convictions for reckless endangerment and assault. Def. Appeal at 3. However, defense counsel notes Defendant's "last criminal conviction was . . . over 15 years ago," although he "spent approximately four months incarcerated for a parole violation in 2016" before successfully completing parole in 2018. *Id.* While Defendant has ties to the New York City community, these ties counterbalance neither his past and present charged violent and dangerous conduct, nor his incentive to flee the weighty charges against him. Therefore, this Court agrees with Magistrate Judge Cho's determination: Defendant's "extensive criminal history, sometimes violent in nature" weighs in favor of detention. *See* Tr. at 10.

### D. The Nature and Seriousness of the Danger Posed by Defendant's Release

As previously stated, Defendant's alleged sex trafficking activity, including of a minor, is exceptionally dangerous. In assessing the dangerousness of a defendant's release, courts consider not only the danger posed to individuals such as victims and witnesses, but also the possibility that a defendant might participate in "criminal activity to the detriment of the community." *Millan*, 4 F.3d at 1048 (internal citation omitted). Courts in the Second Circuit regularly find offenses involving sex trafficking constitute a danger to individuals and the broader community. *See, e.g.*, *United States v. Epstein*, 425 F. Supp. 3d 306, 324 (S.D.N.Y. 2019) (Berman, J.) (denying Defendant's motion for bail where, *inter alia*, his "dangerousness is considerable and includes sex crimes with minor girls"); *United States v. Andrews*, 19-CR-131, 2020 WL 3182911, at *2 (S.D.N.Y. June 15, 2020) (Engelmayer, J.) (finding the defendant's sex trafficking activity posed a "grave danger to the community" and his ability to "carr[y] out the sex-trafficking from a distance, including by text and phone" counseled against home confinement). The danger posed by Defendant's release is furthered heightened where, as here, Defendant has three convictions over three years involving weapons or violent conduct and a parole violation. *See, e.g.*, *United States v. Harris*, 19-CR-300, 2020 WL 4014901, at *7 (S.D.N.Y. July 16, 2020) (Broderick, J.) (finding a defendant's "three prior violent felonies" along with "his inability to abide by the terms of his probation, and short time period over which these crimes were committed all support a finding that Defendant is a danger to the community and militate against granting him temporary release"). As such, the Court agrees with Magistrate Judge Cho and the Government that Defendant's release would pose a serious danger to the community.

## II. The Government Has Demonstrated No Conditions or Combination of Conditions Can Reasonably Assure the Safety of the Community or Defendant's Appearance in Court

Based on the foregoing factors, the Court holds there is no condition or combination of conditions that will reasonably assure the safety of the community and the appearance of Defendant as required. *See* 18 U.S.C. § 3142(e)(1). While the Court has no reason to doubt the intentions of Defendant's family and friends who are willing to act as sureties, their influence does not outweigh the danger Defendant's release would pose to the community. Nor do Defendant's proposed sureties or any possible electronic monitoring condition mitigate Defendant's incentive to flee, given the significant penalties he faces. As such, while the Court recognizes it is only a "limited group of offenders who should be denied bail pending trial," *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (internal quotations omitted), the Court concludes Defendant is among them.

## CONCLUSION

For the foregoing reasons, the Court concludes the Government has demonstrated by clear and convincing evidence that Defendant poses a danger to the community and by a preponderance of the evidence that Defendant is a flight risk, and that Defendant has failed to rebut the presumption favoring his detention. Accordingly, Defendant's motion for appeal of detention is DENIED. Defendant will remain detained pending trial or another final disposition of this action.

**SO ORDERED.**

11



s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 22, 2024
      Brooklyn, New York

12